## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| A. L. WILLIAMS,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **Case No. 3:23-cv-3741-DWD** |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM & ORDER

**DUGAN, District Judge:**

Under 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff seeks judicial review of the final agency decision of Defendant, which denied Plaintiff's application for Supplemental Security Income ("SSI"). As stated below, the Court **AFFIRMS** the final agency decision.

## I. Procedural History

Plaintiff was born on October 24, 1970. (Doc. 9-2, pg. 31). He protectively applied for SSI on December 30, 2020, alleging a disability onset date of March 23, 2019. (Docs. 9-2, pg. 21; 18, pg. 6). The alleged disability related to, *inter alia*, degenerative joint disease and issues of the shoulder, wrist, and hand. (Docs. 9-2, pg. 28; 9-3, pg. 22; 18, pg. 7). The claim was initially denied on August 4, 2021, and it was again denied on reconsideration on January 5, 2022. (Doc. 9-2, pg. 21). Plaintiff sought a hearing, which was held by telephone with an Administrative Law Judge ("ALJ") on February 27, 2023. (Doc. 9-2, pgs. 21, 41). On March 24, 2023, Plaintiff received an Unfavorable Decision. (Doc. 9-2, pgs.

---

[1]Plaintiff's full name will not be used due to privacy concerns.

18-33). The Appeals Council denied review. (Doc. 9-2, pgs. 2-7). Plaintiff has exhausted his administrative remedies, so the ALJ's final decision is ripe for a judicial review.

## II. Generally Applicable Legal Standards

A claimant must be disabled in order to receive SSI. To assess a disability, the ALJ employs a "five-step sequential evaluation process." *See* 20 C.F.R. § 416.920(a)(1), (4). The ALJ asks whether the claimant: (1) is doing substantial gainful activity; (2) has a severe medically determinable physical or mental impairment that meets certain duration requirements or a combination of impairments that is severe and meets the duration requirements; (3) has an impairment that meets or equals an impairment listed in the regulations and satisfies the duration requirements; (4) in view of his residual functional capacity ("RFC") and past relevant work, can perform past relevant work, which is work done within the past five years that was substantial gainful activity and lasted long enough for him to learn how to do it; and (5) in view of his RFC, age, education, and work experience, he can adjust to other work. *See id*. §§ 416.920(a)(4)-(g), 416.960(b)(1)(i).

If the claimant is doing substantial gainful activity under step 1, does not have an impairment or combination of impairments as described at step 2, can perform past relevant work under step 4, or can adjust to other work under step 5, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i), (ii), (iv), (v). If the claimant has an impairment meeting the requirements of step 3 or is incapable of adjusting to other work under step 5, then he is disabled. *See id*. § 416.920(a)(4)(iii), (v). Plaintiff has the burden of proof at steps 1 to 4. *See Mandrell v. Kijakazi*, 25 F.4th 514, 516 (7th Cir. 2022). At step 5, the burden shifts to Defendant to show the claimant can adjust to other work existing in a significant

number of jobs in the national economy. *Brace v. Saul*, 970 F.3d 818, 820 (7th Cir. 2020).

Impairments and related symptoms, such as pain, may cause physical and mental limitations that affect the ability of a claimant to work. *See* 20 C.F.R. § 416.945(a)(1). Steps 4 and 5 assess the most a claimant can do at work, despite those limitations. *See id.* § 416.945(a)(1); *accord* SSR 96-8p, 1996 WL 374184, *2; *Clifford v. Apfel*, 227 F.3d 863, 872-73 n. 7 (7th Cir. 2000). Accordingly, an RFC, which the ALJ completes after step 3 but before steps 4 and 5, assesses the ability of the claimant to perform sustained physical and mental activities in a work setting on a regular and continuing basis, *i.e.*, for eight hours a day and five days a week or an equivalent schedule. *Tenhove v. Colvin*, 97 F. Supp. 2d 557, 568 (E.D. Wisc. 2013); SSR 96-8p, 1996 WL 374184, *2; *accord Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). An RFC must be based on the relevant medical and other evidence of record. *See* 20 C.F.R. § 416.945(a)(3); SSR 96-8p, 1996 WL 374184, *2-3, 5.

In the RFC, the ALJ must identify the claimant's functional limitations and assess his work-related abilities on a function-by-function basis. *Tenhove*, 97 F. Supp. 2d at 569; SSR 96-8p, 1996 WL 374184, *1, 3; *accord Lechner v. Barnhart*, 321 F. Supp. 2d 1015, 1036 (E.D. Wisc. 2004). When doing so, the ALJ considers all impairments, including those that are nonsevere, and the claimant's ability to meet physical, mental, sensory, and other requirements of work. 20 C.F.R. § 416.945(a)(2), (4); *see also Alesia v. Astrue*, 789 F. Supp. 2d 921, 933 (N.D. Ill. 2011) ("[T]he ALJ must consider the combined effect of all impairments, 'even those that would not be considered severe in isolation.' "). "An impairment or combination of impairments is not severe if it does not significantly limit [the] physical or mental ability to do basic work activities." 20 C.F.R. § 416.922(a). And,

3

importantly, while a claimant's statements of pain or other symptoms are considered, they alone do not constitute conclusive evidence of a disability. 20 C.F.R. § 416.929(a).

As to physical abilities, the ALJ assesses the nature and extent of physical limitations, then determines the RFC for work activity on a regular and continuing basis. *See* 20 C.F.R. § 416.945(b). A limited ability to perform physical demands, such as sitting, standing, walking, lifting, carrying, pushing, pulling, reaching, handling, stooping, or crouching may reduce the ability to do past and other work at step 5. *Id.*; *see also* SSR 96-8p, 1996 WL 374184, *5-6. After identifying a claimant's functional limitations and assessing his work abilities on a function-by-function basis, the RFC may be expressed by exertional category, such as "light" or "sedentary."[2] *Tenhove*, 97 F. Supp. 2d at 569; *accord Lechner*, 321 F. Supp. 2d at 1036; SSR 96-8p, 1996 WL 374184, *3. In order to do a full range of work contemplated by an exertional category, the claimant must be able to perform substantially all of the functions at that level. *See* SSR 96-8p, 1996 WL 374184, *3.

Further, in the RFC, the ALJ must address medical source opinions. *See* SSR 96-8p, 1996 WL 374184, *7. If the RFC assessment conflicts with a medical source opinion, then the ALJ must explain why the opinion was not adopted. *Id.*; *accord Smith v. Colvin*, 9 F. Supp. 3d 875, 887 (E.D. Wisc. 2014). Medical opinions and prior administrative medical

---

[2]On the one hand, sedentary work involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 416.967(a). A sedentary job involves sitting but often has walking and standing that is necessary to related duties. *Id.* Jobs are sedentary if walking and standing are required occasionally, and other sedentary criteria are satisfied. *Id.* On the other hand, light work involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." *Id.* § 416.967(b). While the weight lifted may be very little, a job is in the light work category "when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.*

findings are considered according to the following factors: (1) supportability; (2) consistency; (3) the relationship with the claimant; (4) specialization; and (5) other factors supporting or contradicting the opinion, including evidence showing familiarity with other evidence in the claim or an understanding of disability policies and evidentiary requirements. 20 C.F.R. § 416.920c(c). The most important factors to the persuasiveness of a medical opinion or administrative medical finding, however, are supportability and consistency. *See id*. § 416.920c(a), (b)(2).[3] The ALJ may, but is not required to, explain the other factors considered. *See id*. § 416.920c(b)(2), (c)(3)-(5).

### III. The ALJ's Decision

At step 1, the ALJ found Plaintiff had not engaged in substantial gainful activity since the date of his application for SSI, December 30, 2020. (Doc. 9-2, pg. 24). At step 2, the ALJ found Plaintiff had the following severe impairments: degenerative joint disease of the left hip; a torn labrum of the right hip; degenerative joint disease of the right hip; degenerative joint disease of the left shoulder; and degenerative joint disease of the right hand and wrist. (Doc. 9-2, pg. 24). Those medically determinable impairments were found to significantly limit his ability to perform basic work activities. (Doc. 9-2, pg. 24).

The ALJ recognized Plaintiff's medically determinable impairments of mild degenerative disc disease of the cervical and lumbar spine, gastroesophageal reflux disease, obesity, hypertension, and status-post placement of aortic stent were nonsevere

---

[3]The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinions or prior administrative medical findings, the more persuasive they will be. 20 C.F.R. § 416.920c(c)(1). The more consistent medical opinions or prior administrative medical findings are with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive they will be. *Id*. § 416.920c(c)(2).

because they did not cause more than minimal limitations in his physical ability to perform work activity. (Doc. 9-2, pg. 24). The ALJ stressed he considered all medically determinable impairments, including those that were nonsevere. (Doc. 9-2, pg. 25).

At step 3, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of the impairments listed in the regulations. (Doc. 9-2, pg. 27). When doing so, the ALJ emphasized that he considered Plaintiff's impairments both singly and in combination. (Doc. 9-2, pg. 27). As to his upper and lower extremity joint dysfunction, which was considered under listing 1.18, the ALJ noted Plaintiff alleged the need for a cane to ambulate a few times per week. (Doc. 9-2, pg. 27). However, the evidence did not support the requirement of an assistive device, as Plaintiff had normal strength and sensation in all of his extremities and he ambulated normally without an assistive device. (Doc. 9-2, pg. 27). Also, X-rays of the hips showed osteoarthritis and a tear, which were supported by examinations showing a decreased range of motion in the hips, but Plaintiff had full strength and sensation in the lower extremities. (Doc. 9-2, pg. 27). Even though a left shoulder x-ray and right wrist x-ray showed degeneration, he was able to independently initiate and sustain activities that required fine and gross manipulation. (Doc. 9-2, pg. 27). All of this evidence, in the ALJ's opinion, showed Plaintiff's impairments did not meet listing 1.18. (Doc. 9-2, pg. 27).

Before proceeding to step 4, the ALJ found Plaintiff had the following RFC:

[T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the use of ramps and stairs is limited to no more than occasional and the use of ladders, ropes, and scaffolds is limited to no more than occasional. Tasks requiring balancing, stooping, crouching, crawling, and kneeling are all limited to no more than occasional.

> All handling and fingering tasks are limited to no more than frequent. Reaching, in all directions, bilaterally, is limited to no more than frequent.

(Doc. 9-2, pg. 27).

When finding this RFC, the ALJ noted he considered all of Plaintiff's symptoms and the extent to which they could reasonably be accepted as consistent with the objective medical evidence and other evidence. (Doc. 9-2, pg. 27). The ALJ also noted he considered the record medical opinions and prior administrative medical findings. (Doc. 9-2, pg. 27).

Further, the ALJ recognized Plaintiff, in his applications for SSI, alleged a disability due to degenerative joint disease and issues of the shoulder, wrist, and hand. (Doc. 9-2, pg. 28). At the hearing, Plaintiff expanded on those claims, alleging hip pain, left shoulder pain, and right wrist pain that often required a splint. (Doc. 9-2, pg. 28). The ALJ noted, in his testimony, Plaintiff indicated he used a cane for ambulation once or twice a week, and had numbness in the bilateral upper and lower extremities. (Doc. 9-2, pg. 28).

After careful consideration of the evidence, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms. (Doc. 9-2, pg. 28). However, Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were found to not be entirely consistent with the medical evidence and other evidence of record. (Doc. 9-2, pg. 28).

For example, the ALJ noted Plaintiff had a consultative medical examination with Dr. Feinerman in June 2021. (Doc. 9-2, pg. 28). He presented with a cane; however, the cane was not medically prescribed and Plaintiff was able to ambulate normally for 50 feet without a cane. (Doc. 9-2, pg. 28). Plaintiff had a strong and equal bilateral grip strength

without range of motion limitations or anatomic abnormalities. (Doc. 9-2, pg. 28). Plaintiff could get on and off the examination table without assistance. (Doc. 9-2, pg. 28). He also displayed a normal tandem walk and mild difficulty standing on his heels and toes. (Doc. 9-2, pg. 28). Plaintiff had normal strength, sensation, reflexes, and grip strength without spasms or atrophy. (Doc. 9-2, pg. 28). Plaintiff's fine and gross manipulation were normal, and an X-ray showed his right wrist and hand were normal. (Doc. 9-2, pg. 28).

The ALJ further noted the record contained many diagnostic imaging reports that supported the finding that Plaintiff could perform at least a light range of exertion, as set forth in the RFC. (Doc. 9-2, pg. 28). In May 2021, the ALJ acknowledged an x-ray of the left shoulder showed degenerative changes predominantly at the glenohumeral joint. (Doc. 9-2, pg. 28). An MRI of the left hip in August 2021 showed degenerative fraying of the left anterosuperior acetabular labrum with mild to moderate hip chondrosis and small left hip effusion with synovitis. (Doc. 9-2, pg. 28). Plaintiff reported having left hip pain in September 2021, but he did not appear in any acute distress. (Doc. 9-2, pg. 28). Plaintiff's neurological examination was unremarkable. (Doc. 9-2, pg. 28). Plaintiff reported his left hip pain improved with injections, and examinations showed no focal deficits or gait abnormalities. (Doc. 9-2, pgs. 28-29). As to his right wrist dysfunction, the ALJ noted an x-ray from September 2021 showed there was subtle lucency and, possibly, a nondisplaced fracture of the lunate and osteoarthritis. (Doc. 9-2, pg. 29). Despite these diagnostic findings, Plaintiff's examinations revealed his extremities were nontender and he had full range of motion, normal strength, and normal sensation. (Doc. 9-2, pg. 29).

Plaintiff reported numbness in his arms and legs in August 2022, but the ALJ noted an examination revealed no sensory deficits. (Doc. 9-2, pg. 29). In November 2022, Plaintiff complained of generalized body pain and, according to an examination, he had decreased range of motion in the bilateral hips. (Doc. 9-2, pg. 29). However, there were no focal deficits, and Plaintiff did not appear ill or in acute distress. (Doc. 9-2, pg. 29).

According to the ALJ, Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms were inconsistent because the objective evidence did not support the severity alleged in the activities of daily living, symptomatology, and treatment regimen set forth in his function reports, testimony, and the medical record. (Doc. 9-2, pg. 29). As to the activities of daily living stated in Plaintiff's function report and testimony, the ALJ found they were not consistent with debilitating impairments. (Doc. 9-2, pg. 29). Plaintiff lived with various friends or family. (Doc. 9-2, pg. 29). He tried to help with chores and meal preparation, but he dropped objects at times. (Doc. 9-2, pg. 29). Plaintiff could go to the grocery store, where he used a riding shopping cart. (Doc. 9-2, pg. 29). Plaintiff owned and could drive a motor vehicle, but he preferred catching rides from other people due to the pain caused by driving. (Doc. 9-2, pg. 29). He flew from Illinois to Alabama for a family trip in 2022. (Doc. 9-2, pg. 29). Depending on the day, Plaintiff could stand and walk for five minutes to an hour at a time. (Doc. 9-2, pg. 29).

As to his symptomatology and treatment regimen, the ALJ found, when considered with the preponderance of evidence, Plaintiff's allegations were supported to a degree. (Doc. 9-2, pg. 29). However, they were not consistent with allegations of debilitating impairments. (Doc. 9-2, pg. 29). As recently as November 2022, the ALJ noted

that treatment records showed Plaintiff was prescribed pain medications, namely, Norco and meloxicam, that controlled his pain and ensured his mobility. (Doc. 9-2, pg. 29).

The ALJ noted Plaintiff, in his testimony, stated pain medication controlled his hip pain. (Doc. 9-2, pg. 29). Doctors advised that he should perform exercises, such as leg lifts and squatting, to relieve hip pain. (Doc. 9-2, pg. 29). Plaintiff performed those activities every morning that he was not in severe pain. (Doc. 9-2, pg. 29). The ALJ noted Plaintiff's testimony that his left shoulder felt fine lately. (Doc. 9-2, pg. 29). Previously, Plaintiff woke up with left shoulder pain, necessitating a trip to the emergency room. (Doc. 9-2, pg. 29). That had not happened in a long time. (Doc. 9-2, pg. 29). The ALJ observed Plaintiff wore a splint on his right wrist to relieve pain and provide stability/functionality, but that impairment was monitored on a yearly basis. (Doc. 9-2, pg. 29).

Next, the ALJ acknowledged he could not defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical findings or medical opinions. (Doc. 9-2, pg. 29). The ALJ stated he considered the medical opinions and prior administrative medical findings contained in the record as follows:

> The claimant's friend completed a third-party function report in March 2021 reporting that the claimant is able to live with family members, tend to personal care and hygiene activities independently, prepare simple meals, complete light household chores, pay attention, follow instructions, and get along with other people. The undersigned finds this third-party statement persuasive to the extent that it is consistent with objective medical evidence which supports a limited light residual functional capacity as well as medical source statements which also support a range of light exertion.
>
> Following the June 2021 consultative exam, Adrian Feinerman, M.D., opines the claimant is able to sit, stand, walk, hear, and speak normally. She opines the claimant is able to lift, carry, and handle objects without

10

difficulty. The undersigned finds this opinion partially persuasive because even though it states the claimant has normal functioning or is able to perform activities without difficulty, the opinion does not state to what extent the claimant is able to perform these activities or how often given his impairments. For example, Dr. Feinerman opines the claimant can lift, carry, and handle objects without difficulty but also notes the claimant has wrist and hand pain for the past seven years which would reasonably cause some limitation in these areas. Furthermore, Dr. Feinerman opines the claimant can sit, stand, and walk normally, but the examination report shows the claimant has mild limitations in standing on heels and toes, squatting and rising, and using a cane for ambulation which supports at least some degree of limitation in these areas. Therefore, the undersigned finds the evidence contained in Dr. Feinerman's report is more consistent with a light range of exertion rather than no functional limitations.

State agency consultants[, Drs. Mikell and Gotanco,] opine in both the initial and reconsideration determinations that the claimant is able to perform light exertion with occasionally climbing ramps, stairs, ladders, ropes, and scaffolds and occasionally stooping, kneeling, crouching, and crawling. They opine he must avoid concentrated exposure to environmental hazards. The undersigned finds these opinions partially persuasive. The undersigned finds the light range of exertion with occasional postural limitations persuasive because the State agency cites to evidence showing that despite some degenerative joint disease in the upper and lower extremities, the claimant has normal range of motion and full strength in all extremities. They note that the claimant is able to ambulate 50 feet without an assistive device and does not have end organ damage despite cardiovascular impairments. The undersigned does not find it persuasive that the State agency does not include any sort of manipulative limitations because the State agency cites to evidence showing the claimant is status-post right wrist fracture. Finally, the undersigned does not find the environmental limitations persuasive because the State agency cites to evidence showing the claimant has normal gait without any balance problems.

In June 2022, Richard Joseph, M.D., opines the claimant has no activity restrictions and can return to work. Even though this opinion does not set forth the activities the claimant can and cannot perform or to what extent the claimant is able to perform activity despite his impairments, the undersigned finds the general assertion that the claimant is not completely precluded from physical activity given some back and shoulder pain persuasive because accompanying examination and treatment records support this statement showing normal findings.

(Doc. 9-2, pgs. 30-31) (cleaned up).

Based on this evidence, the ALJ found Plaintiff had the aforementioned RFC. (Doc. 9-2, pg. 31). According to the ALJ, the RFC was supported by the evidence that showed, despite his degenerative joint disease in the upper and lower extremities, Plaintiff's pain was well controlled with conservative measures like medication and pain relief injections. (Doc. 9-2, pg. 31). The ALJ found Plaintiff could ambulate with normal gait, and he did not require an assistive device. (Doc. 9-2, pg. 31). To accommodate his joint pain and upper extremity mobility problems, the ALJ indicated Plaintiff's RFC limited him to light exertion with only occasional postural activities. (Doc. 9-2, pg. 31). Handling, fingering, and reaching were also limited to no more than frequent. (Doc. 9-2, pg. 31).

At step 4, the ALJ found Plaintiff could perform his past relevant work as a janitor (DOT 382.664-010, medium exertion, semi-skilled, SVP 3) and security guard (DOT 372.667-034, light exertion as described in the DOT as generally performed in the national economy, but medium exertion as actually performed by Plaintiff, semi-skilled, SVP 3). (Doc. 9-2, pg. 31). That past relevant work "d[id] not require the performance of work-related activities precluded by the claimant's [RFC]." (Doc. 9-2, pg. 31).  When comparing Plaintiff's RFC to the demands of that past relevant work, the ALJ found he was able to work as a security guard as generally performed but not as actually performed. (Doc. 9-2, pg. 31). The ALJ noted, at the hearing, the vocational expert stated the requirements of the security guard position, as generally performed and as described in the DOT at light exertion, did not exceed the RFC for a limited range of light exertion. (Doc. 9-2, pg. 31).

In the alternative at step 5, the ALJ found, in addition to his past relevant work and in consideration of his age, education, work experience, and RFC, Plaintiff could perform other jobs existing in significant numbers in the national economy. (Doc. 9-2, pg. 31). In doing so, the ALJ noted Plaintiff, at 50-years-old, was closely approaching advanced age. (Doc. 9-2, pg. 31). He also had a high school education. (Doc. 9-2, pg. 31). Since using the Medical-Vocational Rules as a framework supported a finding that Plaintiff was not disabled, whether or not he had transferable job skills, the transferability of job skills was not material to the determination of disability. (Doc. 9-2, pg. 31).

Moreover, if Plaintiff had the RFC to perform the full range of light work, then the ALJ found a finding of "not disabled" would be directed by Medical-Vocational Rule 202.14. (Doc. 9-2, pg. 32). However, Plaintiff's ability to perform all or substantially all of the requirements of that level of work was impeded by additional limitations. (Doc. 9-2, pg. 32). To determine the extent to which those limitations eroded the unskilled light occupational base, the ALJ asked the vocational expert whether jobs existed in the national economy for an individual with Plaintiff's age, education, work experience, and RFC. (Doc. 9-2, pg. 32). The vocational expert testified that, given all of those factors, such an individual would be able to perform the requirements of representative occupations, such as mail clerk (DOT 209.687-026, light exertion, unskilled, SVP 2, with approximately 91,000 jobs in the national economy), warehouse checker (DOT 222.687-010, light exertion, unskilled, SVP 2, with approximately 200,000 jobs in the national economy), and cashier (DOT 211.462-010, light exertion, unskilled, SVP 2, with approximately 300,000 jobs in the national economy). (Doc. 9-2, pg. 32). Based on this testimony of the vocational

expert, the ALJ concluded Plaintiff was capable of successfully adjusting to other work existing in significant numbers in the national economy. (Doc. 9-2, pg. 32). As such, the ALJ determined a finding of not disabled was warranted for Plaintiff. (Doc. 9-2, pg. 32).

## IV. Analysis[4]

The Court's review of the ALJ's decision is "extremely limited" and "very deferential." 42 U.S.C. § 405(g); *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)). Findings of fact, supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); *accord Clifford*, 227 F.3d at 869. The Court will reverse the ALJ's decision only if the findings of fact were not supported by substantial evidence or the ALJ applied the wrong legal standard. *Clifford*, 227 F.3d at 869; *accord Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Clifford*, 227 F.3d at 869 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Jarnutowski*, 48 F.4th at 773. If reasonable minds could differ about the claimant's alleged disability and the ALJ's decision is supported by substantial evidence, then the Court will affirm the ALJ. *Jarnutowski*, 48 F.4th at 773 (quoting *Elder*, 529 F.3d at 413). The Court reviews the entire record, but it does not reweigh the evidence, resolve conflicts, decide credibility, or substitute its judgment for that of the ALJ. *Clifford*, 227 F.3d at 869; *accord Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). It is notable, though, that an ALJ must build a logical bridge between the evidence and its

---

[4]The portions of the evidentiary record relevant to Plaintiff's arguments and the Court's resolution of the case are incorporated into the analysis below.

conclusions. *Jarnutowski*, 48 F.4th at 773 (quoting *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021)); *but see Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015) ("[A]n ALJ 'need not provide a complete written evaluation of every piece of testimony and evidence.' ").

In this case, Plaintiff raises two primary arguments. First, he argues the ALJ failed to adequately address his walking limitations, as reflected in the agency medical opinions of Drs. Mikell, Gotanco, and Feinerman. (Doc. 18, pgs. 6, 13-22, 32). Plaintiff suggests the doctors found he was able to ambulate for only 50 feet; nevertheless, the ALJ found he could perform past relevant work as a janitor and security guard, each of which requires significant walking. (Doc. 18, pgs. 6, 13-22, 32). Second, Plaintiff argues the ALJ failed to adequately explain or discuss the evidentiary basis for finding he was limited to frequent reaching, handling, and fingering. (Doc. 18, pgs. 6, 14, 22-32). When doing so, the ALJ allegedly overlooked evidence, including the third-party function report of Latonya Roberts and the supplement to the Adult Function Report. (Doc. 18, pgs. 6, 22-32).

Based on its review of the entire evidentiary record, without reweighing the evidence, resolving any conflicts in the evidence, deciding credibility, or substituting its own judgment for that of the ALJ, the Court must reject Plaintiff's two arguments and find the ALJ's decision was supported by substantial evidence. 42 U.S.C. § 405(g); *Clifford*, 227 F.3d at 869; *Martin*, 950 F.3d at 373; *Jarnutowski*, 48 F.4th at 773; *Lopez*, 336 F.3d at 539.

### 1. Plaintiff's Walking Limitations and the Agency Medical Opinions of Drs. Mikell, Gotanco, and Feinerman

Plaintiff notes, given his age, he could have qualified for SSI if he was limited by the ALJ to sedentary rather than light work. (Doc. 18, pgs. 14-15). Plaintiff further notes

"[t]he ability to walk or stand is the primary difference between sedentary and light work." (Doc. 18, pg. 14). In sum, Plaintiff suggests a limitation of sedentary work would have been warranted if the ALJ, based on the agency medical opinions of Drs. Mikell, Gotanco, and Feinerman, properly considered his use of a cane, maximum walking distance (50 feet), and the total time he is able to walk or stand. (Doc. 18, pgs. 15-22).

As recounted above, the ALJ found as follows regarding Drs. Mikell and Gotanco:

State agency consultants[, Drs. Mikell and Gotanco,] opine in both the initial and reconsideration determinations that the claimant is able to perform light exertion with occasionally climbing ramps, stairs, ladders, ropes, and scaffolds and occasionally stooping, kneeling, crouching, and crawling. They opine he must avoid concentrated exposure to environmental hazards. The undersigned finds these opinions partially persuasive. The undersigned finds the light range of exertion with occasional postural limitations persuasive because the State agency cites to evidence showing that despite some degenerative joint disease in the upper and lower extremities, the claimant has normal range of motion and full strength in all extremities. They note that the claimant is able to ambulate 50 feet without an assistive device and does not have end organ damage despite cardiovascular impairments. The undersigned does not find it persuasive that the State agency does not include any sort of manipulative limitations because the State agency cites to evidence showing the claimant is status-post right wrist fracture. Finally, the undersigned does not find the environmental limitations persuasive because the State agency cites to evidence showing the claimant has normal gait without any balance problems.

(Doc. 9-2, pg. 26) (cleaned up).

When comparing the ALJ's explanation to the actual findings of Drs. Mikell and Gotanco, it is clear to the Court that the ALJ did not commit error on this issue. *Compare* (Doc. 9-2, pg. 30), *with* (Doc. 9-3, pgs. 24, 26-29). Most notably, Drs. Mikell and Gotanco, like the ALJ, found Plaintiff was not disabled since he could sustain the requisite level of functioning despite impairments, he could adjust to other work, he was not

16

limited to unskilled work, and his RFC allowed light work. (Docs. 9-3, pgs. 28, 35, 38-39).

Specifically, Drs. Mikell and Gotanco found Plaintiff had severe osteoarthrosis allied disorders (primary), severe disorders of the skeletal spine (secondary), and nonsevere essential hypertension. (Doc. 9-3, pgs. 24, 33). Like the ALJ, they found Plaintiff's statements about the intensity, persistence, and functionally limiting effects of his symptoms were not substantiated by medical evidence. (Doc. 9-3, pgs. 26, 35). Each doctor also found Plaintiff's statements regarding the symptoms, considering the total medical and nonmedical evidence, were only partially consistent. (Doc. 9-3, pgs. 26, 35).

Drs. Mikell and Gotanco found Plaintiff could occasionally lift and/or carry 20 pounds, and he could frequently lift and/or carry 10 pounds. (Doc. 9-3, pgs. 26, 35). Plaintiff did not have manipulative limitations or exertional limitations on the ability to push or pull with either the upper or lower extremities. (Doc. 9-3, pgs. 26-27, 36). Of particular relevance, Drs. Mikell and Gotanco, like the ALJ, found Plaintiff could stand and/or walk (with normal breaks) for 6 hours in an 8-hour workday. (Doc. 9-3, pgs. 26, 36). Postural limitations included only occasional climbing (ramps, stairs, ladders, ropes, scaffolds), stooping, kneeling, crouching, and crawling. (Doc. 9-3, pgs. 26, 36).

Each doctor also discussed various x-rays and MRIs from late-2020 to mid-2021. (Doc. 9-3, pgs. 27-28, 36). Despite pain in the left foot, left leg, lumbar back, and left knee during that time, Dr. Mikell observed the x-rays and MRIs revealed: no acute abnormality of the c-spine; minimal tricompartmental OA and chondrocalcinosis of the left knee, only mild disc degenerative disease; no fracture, malalignment, destructive process, or other remarkable findings of the right wrist and hand; left hip degenerative fraying of the left

anterosuperior acetabular labrum with mild to moderate hip chondrosis; small left hip effusion with synovitis; a complex tear of anterosuperior right acetabular labrum with right hip chondrosis; possible calcification of the left hip; degenerative changes, predominantly at glenohumeral joint, of the left shoulder; and a normal left foot. (Doc. 9-3, pg. 27). As additional explanation, Dr. Mikell noted Plaintiff displayed: "no anatomic abnormality of any extremity and no evidence of redness, warmth, thickening or effusion of any joint"; "no limitation of motion in any joints"; strong and equal bilateral grip strength; "no anatomic deformity of the cervical, thoracic, or lumbar spine and no limitation of motion of any spinal segment"; normal ambulation without an assistive device, despite having a cane; an ability to ambulate 50 feet; normal muscle strength (5/5) and no spasms or atrophy; normal fine and gross manipulation; pain of the left hip, knee, and shoulder, for which he was referred for an injection; controlled hypertension with mediations and modifications to diet and life-style; full strength and sensations related to ambulation; and full range of motion for all joints at I-CE. (Doc. 9-3, pgs. 27-28).

Dr. Gotanco, in his additional explanation on reconsideration, indicated a lumbar spine x-ray from June 2021 "revealed mild lumbar spondylosis and mild aortoiliac artery atherosclerosis." (Doc. 9-3, pg. 37). As of September 2021, Dr. Gotanco noted Plaintiff was status-post fracture of the right wrist. (Doc. 9-3, pg. 38). He also "[h]ad an injection of [the] left hip." (Doc. 9-3, pg. 38). Plaintiff was negative for arthralgias, back pain, and gait problems. (Doc. 9-3, pg. 38). His left hip pain was improving due to the injection. (Doc. 9-3, pg. 38). Plaintiff reported no worsening or new conditions. (Doc. 9-3, pg. 38). Thus, Dr. Gotanco found his reconsideration process was largely consistent with the initial

18

claim findings of Dr. Mikell, so the initial claim should be affirmed. (Doc. 9-3, pg. 38).

Likewise, the ALJ discussed Dr. Feinerman's consultative examination as follows:

The claimant is sent for a consultative exam in June 2021 which shows the claimant presents with a cane but is able to ambulate normally for 50 feet without an assistive device, and the assistive device was not prescribed. He has strong and equal grip strength bilaterally without limitations of range of motion in any joint and there are no anatomic abnormalities in any joints. The claimant is able to get on and off the exam table without assistance and tandem walk normally, but has mild difficulty standing on his heels and toes. Neurologically the claimant has normal strength and sensation as well as normal reflexes. He has normal grip strength, no spasm or atrophy, and fine and gross manipulation are normal. X-ray of the right wrist and hand are normal.

(Doc. 9-2, pg. 28) (cleaned up).

In another portion of his decision, the ALJ states:

Following the June 2021 consultative exam, Adrian Feinerman, M.D., opines the claimant is able to sit, stand, walk, hear, and speak normally. She opines the claimant is able to lift, carry, and handle objects without difficulty. The undersigned finds this opinion partially persuasive because even though it states the claimant has normal functioning or is able to perform activities without difficulty, the opinion does not state to what extent the claimant is able to perform these activities or how often given his impairments. For example, Dr. Feinerman opines the claimant can lift, carry, and handle objects without difficulty but also notes the claimant has wrist and hand pain for the past seven years which would reasonably cause some limitation in these areas. Furthermore, Dr. Feinerman opines the claimant can sit, stand, and walk normally, but the examination report shows the claimant has mild limitations in standing on heels and toes, squatting and rising, and using a cane for ambulation which supports at least some degree of limitation in these areas. Therefore, the undersigned finds the evidence contained in Dr. Feinerman's report is more consistent with a light range of exertion rather than no functional limitations.

(Doc. 9-2, pg. 30) (cleaned up).

As with Drs. Mikell and Gotanco, the ALJ did not err in his consideration of the

consultative medical examination of Dr. Feinerman. *Compare* (Doc. 9-2, pgs. 28, 30), *with*

(Doc. 9-8, pgs. 785-798). Dr. Feinerman observed Plaintiff had "no anatomic abnormality of any extremity and no evidence of redness, warmth, thickening or effusion of any joint." (Doc. 9-8, pg. 791). Plaintiff also had no limitation of motion in any joints, and his grip strength was strong and equal bilaterally. (Doc. 9-8, pg. 791). Plaintiff had no anatomic deformity of the cervical, thoracic, or lumbar spine and no limitation of motion of any spinal segment. (Doc. 9-8, pg. 791). Similar to Drs. Mikell and Gotanco, Dr. Feinerman found: "The claimant has a cane, but, ambulation is normal without an assistive device. The claimant is able to ambulate 50 feet." (Doc. 9-8, pg. 791). Plaintiff was mildly limited when standing on his toes, standing on his heels, squatting/arising, and due to his cane. (Doc. 9-8, pg. 791). Plaintiff's cranial nerves were normal, cerebellar function was intact, muscle strength was normal and without spasm or atrophy, fine and gross manipulation were normal, and reflexes were normal and equal bilaterally. (Doc. 9-8, pg. 792). Dr. Feinerman stated: "Upon physical examination today, this claimant is able to sit, stand, walk, hear, and speak normally." (Doc. 9-8, pg. 792).

Nevertheless, Plaintiff essentially takes issue with the purported failure of the ALJ to explain why the opinions of Drs. Mikell, Gotanco, and Feinerman "that '[t]he claimant can ambulate 50 feet' " were not adopted. (Doc. 18, pgs. 16-18, 21). However, the ALJ's decision was consistent with or even more favorable to Plaintiff than the findings of those doctors. The ALJ found Dr. Feinerman's findings only partially persuasive; in doing so, the ALJ found Plaintiff was more limited than was found by Dr. Feinerman.  Further, Drs. Mikell and Gotanco, like the ALJ, agreed Plaintiff could engage in light work with occasional postural limitations. The ALJ only disagreed with Drs. Mikell and Gotanco in

a manner that was favorable to Plaintiff. The ALJ, unlike those doctors, believed manipulative limitations were required due to a "status-post right wrist fracture," which is relevant to Plaintiff's second argument. (Doc. 9-2, pg. 30). When discussing the findings of Drs. Mikell, Gotanco, and Feinerman, the ALJ specifically cited the medical evidence supporting his conclusions. (Doc. 9-2, pgs. 26, 28, 30). The ALJ also cited the doctors' observation that Plaintiff could ambulate normally for 50 feet without an assistive device, despite presenting with or reporting the use of a non-prescribed cane. (Doc. 9-2, pgs. 28, 30). The Court disagrees with Plaintiff's claim that more was required of the ALJ. *See* SSR 96-9p, 1996 WL 374185, *7 ("To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case."); *Deborah H. v. Kijakazi*, No. 21-cv-1195, 2023 WL 2743549, *9 (S.D. Ill. March 31, 2023) ("Plaintiff's testimony that she had been using a cane for the past three months is not sufficient to warrant such a restriction in her residual functional capacity assessment. [Citation]. Here, Plaintiff has not presented any evidence documenting that use of a cane is a medical necessity, and the ALJ sufficiently supported her conclusion as to Plaintiff's use of a cane."). Accordingly, the Court concludes the ALJ's findings on this issue were supported by substantial evidence, including by the very medical opinions and findings relied upon by Plaintiff for this issue. *See*, *e.g.*, (Doc. 9-2, pgs. 27-31) (citing Docs. 9-2, pgs. 41-74; 9-3, pgs. 26-28, 35-39; 9-7, pgs. 17-19, 22; 9-8,

pgs. 791-92, 796; 9-9, pgs. 45, 96, 110-11, 114, 131, 168, 170; 9-10, pgs. 284-85, 289-90).

### 2. The Evidentiary Basis for the Limitation on
### Reaching, Handling, and Fingering

Next, Plaintiff suggests the ALJ merely provided a "catchall finding," without a sufficient discussion of the evidence and along with "many other limitations," to address the frequent limitation on reaching, handling, and fingering. (Doc. 18, pg. 22). According to Plaintiff, the ALJ failed to provide an adequate explanation or narrative discussion of the evidence, such as the "limitations related to degenerative joint disease of the shoulder, hand, and wrist…[or] why further limitations were not warranted." (Doc. 18, pgs. 23-31). Defendant, for its part, argues "Plaintiff fails to point to any evidence that demonstrates… he was more limited than the ALJ found in an already-restrictive RFC." (Doc. 24, pg. 15).

Here, as with his first argument, the Court cannot reconcile Plaintiff's second argument with the ALJ's decision on the limitation for reaching, handling, and fingering. The ALJ recognized an x-ray of the left shoulder showed degenerative changes predominantly at the glenohumeral joint, while an x-ray of the right wrist showed there was subtle lucency and, possibly, a nondisplaced fracture of the lunate and osteoarthritis. (Doc. 9-2, pgs. 28-29) (citing Doc. 9-9, pgs. 45, 170). However, despite these diagnostic findings, the ALJ noted another x-ray of the right hand/wrist was normal and Plaintiff had normal strength and sensation in his extremities, a strong and equal bilateral grip strength without range of motion limitations or anatomic abnormalities, normal strength, sensation, and reflexes without spasms or atrophy, and normal fine and gross manipulation. (Doc. 9-2, pgs. 27-29) (citing Docs. 9-8, pgs. 791-92, 796). When doing so,

the ALJ relied upon the consultative medical examination of Dr. Feinerman, who found Plaintiff could "lift, carry, and handle objects without difficulty." (Doc. 9-8, pgs. 791-92).

Further, contrary to Plaintiff's present argument, the ALJ adequately explained how the objective evidence was unsupportive of and inconsistent with the severity alleged in the activities of daily living, symptomatology, and treatment regimen set forth in the function reports, testimony, and the medical record. (Doc. 9-2, pg. 29). As discussed above, based on his own hearing testimony, the ALJ found Plaintiff lived with various friends or family, dropped objects at times but still tried to help with chores and meal preparation, shopped for groceries while using a riding shopping cart, owned and could drive a motor vehicle but preferred catching rides with others in order to avoid pain, flew from Illinois to Alabama for a family trip in 2022, could stand and walk for five minutes to an hour at a time, had a left shoulder that felt fine lately, and wore a splint on his right wrist to relieve pain and provide stability/functionality but otherwise monitored that impairment on a yearly basis. (Doc. 9-2, pg. 29) (citing Doc. 9-2, pgs. 41-74).

Of particular relevance to Plaintiff's present argument, the ALJ discussed the March 2021 third-party function report of Plaintiff's friend, Latonya Roberts. The ALJ noted Ms. Roberts reported that Plaintiff lived with family members, independently tended to personal care and hygiene activities, prepared simple meals, completed light household chores, paid attention, followed instructions, and got along with other people. (Doc. 9-2, pg. 30) (citing Doc. 9-7, pgs. 17-19, 22). While it is true the ALJ did not discuss every aspect of Ms. Roberts' third-party function report, the Court disagrees that was required in light of the ALJ's broader explanation of and specific citation to the

comprehensive evidentiary record throughout his decision. (Doc. 9-2, pg. 30).

Further, Plaintiff takes issue with this statement of the ALJ: "The undersigned finds this third-party statement persuasive to the extent that it is consistent with objective medical evidence which supports a limited light residual functional capacity as well as medical source statements which also support a range of light exertion." (Doc. 9-2, pg. 30). However, when making that purportedly vague statement, the ALJ specifically cited the administrative medical findings of Drs. Mikell and Gotanco, which, as discussed above, were only partially persuasive because Plaintiff had normal range of motion and full strength in all extremities but required manipulative limitations due to a status-post right wrist fracture. (Doc. 9-2, pg. 30) (citing Doc. 9-3, pgs. 26-28, 35-38). The ALJ was consistent on this issue. For example, as to the June 2021 consultative medical examination, he found Dr. Feinerman was partially persuasive because, while she observed Plaintiff could lift, carry, and handle objects without difficulty, the opinion did not state the extent or frequency to which he could perform those activities given his wrist and hand impairments. (Doc. 9-2, pg. 30) (citing Doc. 9-8, pgs. 792). As such, the Court finds the ALJ's findings on this issue were clearly supported by substantial evidence.

### V. Conclusion

For the foregoing reasons, the Court **AFFIRMS** the final agency decision. The Clerk of the Court is **DIRECTED** to enter judgment for Defendant and against Plaintiff.

**SO ORDERED.**

Dated: March 31, 2025.

s/ *David W. Dugan*
_____
DAVID W. DUGAN
United States District Judge